# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRKLAND SINGER, individually and on behalf of Current and Former California Employees of Beckton, Dickinson and Company and Med-Safe Systems, Inc.,<br><br>                    Plaintiff,<br><br>    vs.<br><br>BECTON DICKINSON AND COMPANY; MED-SAFE SYSTEMS, INC., doing business as BD Medical; and DOES 1-10, inclusive,<br><br>                    Defendants. | CASE NO. 08-CV-821 - IEG (BLM)<br><br>ORDER:<br><br>(1) PRELIMINARILY CERTIFYING CLASSES FOR SETTLEMENT PURPOSES;<br><br>(2) PRELIMINARILY APPROVING SETTLEMENT;<br><br>(3) APPOINTING CLASS COUNSEL;<br><br>(4) APPROVING CLASS NOTICE; and<br><br>(5) SETTING A FINAL APPROVAL HEARING FOR APRIL 19, 2010.<br><br>[Doc. No. 35] |

Currently before the Court is Plaintiff Kirkland Singer's ("Singer") Motion for Preliminary Approval of a class settlement, filed on November 24, 2009. [Doc. No. 35]. For the reasons set forth below, the Court GRANTS Plaintiff's Motion.

## BACKGROUND

The facts of this case are known to the Court and the parties and need not be repeated herein.

### I.     Procedural Background

On March 27, 2008, Plaintiff filed a purported class action against Defendants on behalf of himself and other current and former employees in the Superior Court for the County of San Diego.

[Doc. No. 1]. Defendants removed the case to this Court on May 6, 2008. [Id.] On August 11, 2008, following the Court's Order on Defendants' Motion to Strike and Motion to Dismiss, Plaintiff filed a First Amended Complaint ("FAC"). [Doc. No. 16].

In his FAC, Plaintiff alleged wage and hour violations over a class period extending back to March 27, 2004 and sought various forms of relief such as unpaid wages, including statutory wages for meal periods and rest breaks, vacation wages, interest, waiting time penalties, PAGA penalties, restitution, damages, injunctive and other equitable relief, and attorneys' fees and costs under various provisions of the California Labor Code and the applicable wage orders of the Industrial Wage Commission. Primarily, Plaintiff alleged as class claims that: (1) Defendants had an illegal "use-it-or-lose-it" policy, whereby employees forfeited accrued vacation wages ("Vacation Claims"); and (2) Defendants did not pay non-exempt employees all wages due and owing, including meal and rest period premiums, overtime, reporting time, and minimum wages ("Non-Exempt Claims").[1]

Subsequently, according to Plaintiff, parties engaged in "extensive informal and formal discovery, investigation and pre-trial motion practice concerning the facts and the law." (Hollis Decl., ¶¶ 7, 11-21.) As part of those efforts, Plaintiff was subjected to a two-day deposition, and Plaintiff's counsel conducted a two-day deposition of Defendant Med-Safe's person most knowledgeable (Nathan Miller) about policies and practices at its Oceanside facility relating to reporting time pay, meal and rest periods, vacation/paid-time off, timekeeping, and payroll. (Id. ¶ 11.)

Finally, in April 2009, the parties agreed to engage in settlement discussions, which culminated in a formal, full-day mediation session on May 21, 2009 before a respected neutral mediator, Joel M. Grossman, Esq., who is highly experienced in wage and hour matters such as the claims in this case. (Id. ¶ 13.) Although the May 21 mediation session resolved many of the differences, it did not result in a settlement. (Id. ¶ 14.) Mr. Grossman therefore made a mediator's proposal to resolve the parties' impasse, which the parties accepted on June 2, 2009. (Id.) Subsequently, the parties worked for five months to come up with and draft the present class settlement agreement, and a separate settlement agreement concerning Plaintiff's individual misclassification claim.(Id.)

---

[1] Plaintiff also alleged that Defendants misclassified him as an exempt employee between February 24, 2004 and April 30, 2005. Plaintiff's misclassification claim, however, was alleged solely as an individual claim, and not on the behalf of the purported class.

## II. The Proposed Settlement

Pursuant to the proposed settlement, Defendants agreed to pay up to One Million Dollars ("Gross Fund Value") to compensate the Vacation Settlement Group Members and Non-Exempt Settlement Group Members (collectively, "Settlement Group Members"), including Plaintiff, for their alleged unpaid wages, interest, and penalties, and to provide for the accompanying costs, penalty payments, and fees. Specifically, out of the Gross Fund Value: (1) $3,000.00 has been allocated to be paid to the California Labor Workforce Development Agency ("LWDA") for PAGA penalties pursuant to Labor Code Section 2699; (2) $8,000.00 will be paid to Simpluris, Inc. for the claim administration process; (3) Plaintiff Singer is entitled to recover a service enhancement award of up to $25,000.00 for his service to the Settlement Group Members; (4) the firm of GraceHollis LLP would recover an award of litigation costs up to $11,500.00 and attorneys' fees up to $333,333.00; and (5) Defendants will pay the employer's portion of payroll taxes attributable to the "wage" component of the individual settlement awards. (Stipulation and Settlement Agreement of Claims, attached to Hollis Decl., Ex. A, ¶¶ 4-8 [hereinafter Settl. Agr.].)

Thereafter, $548,775.00 will be allocated to the Non-Exempt Settlement Group Members ("Non-Exempt Settlement Fund") and $73,392.00 will be allocated to the Vacation Settlement Group Members ("Vacation Settlement Fund"), for a combined maximum of $622,167.00 to be paid out as Net Fund Value. (Id. ¶ 5.) Out of this, $3,000.00 will be paid to the LWDA for PAGA penalties, leaving $619,167.00 to be paid out to the Settlement Group Members ("Payout Fund"). (Id. ¶ 6.) Under the terms of the proposed settlement, all Settlement Group Members who do not opt-out of the settlement, including Plaintiff Singer, will be eligible to submit a Claim Form for a settlement award.[2]

There are approximately 258 persons in the Vacation Settlement Group, and 98 of these are eligible to claim funds from the Vacation Settlement Fund. (Hollis Decl. ¶¶ 16, 20.) To be eligible, each purported class member's employment with Defendants must have ended between March 27, 2004 and December 31, 2006. (Settl. Agr. ¶ 6.B.) The Vacation Settlement Awards will be based on 110% of actual vacation wages purportedly owed, calculated by multiplying each Vacation Settlement

---

[2] Plaintiff Singer, however, cannot recover more than $750.00 from the Payout Fund. (Settl. Agr. ¶ 6.B.)

1  Member's amount of accrued, unpaid vacation time by that person's final hourly rate of pay. For each

2  Vacation Settlement Award, 50% shall be allocated to "wages," 40% shall be allocated to "penalties,"

3  and 10% shall be allocated to "interest." (Id.) Of the 50% allocated to "wages," payroll deductions will

4  be made for state and federal withholding taxes and any other applicable payroll deductions owed by

5  Defendants as a result of the payment. (Id.)

6  An estimated 251 persons in the Non-Exempt Settlement Group are eligible to claim funds

7  from the Non-Exempt Settlement Fund. (Hollis Decl. ¶ 21.) The payment of Non-Exempt Settlement

8  Awards will be calculated by assigning a certain dollar value to each week of work by each employee

9  in a non-exempt position during the class period. (Settl. Agr. ¶ 6.B.) For each Non-Exempt Settlement

10 Award, 50% shall be allocated to "wages," 40% shall be allocated to "penalties," and 10% shall be

11 allocated to "interest." (Id.) Of the 50% allocated to "wages," payroll deductions will be made for state

12 and federal withholding taxes and any other applicable payroll deductions owed by Defendants as a

13 result of the payment. (Id.)

14 In exchange for these awards, both Vacation Settlement Group Members and Non-Exempt

15 Settlement Group Members will release their respective claims against Defendants for the applicable

16 class periods. (Id. ¶ 2.) Plaintiff Singer furthermore will release all claims against Defendants relating

17 to his employment and separation therefrom, not just the non-exempt and vacation claims. (Id.; Hollis

18 Decl. ¶ 24.) Moreover, the Settlement Agreement contemplates that Plaintiff's Second Amended

19 Complaint ("SAC"), alleging federal/FLSA claims for overtime, will be deemed filed and dismissed

20 as of final approval of the proposed settlement.[3] (Settl. Agr. ¶ II.)

21 Finally, the proposed settlement provides that it is a "claims made settlement," and therefore

22 any unclaimed share of the Payout Fund shall not become part of the final payout to the class

23 members, but rather will be retained by Defendants. (Settl. Agr. ¶ 6.B.) However, if the total payout

24 to the class members is less than 50% of the Payout Fund, the claimed awards of all Settlement Group

25 Members will be reapportioned so that at least 50% of the Payout Fund is paid out. (Id.)

---

[3] The Settlement Agreement provides that, "[t]o effectuate the Non-Exempt Released Federal Claims by Non-Exempt Settlement Class Members, the Named Plaintiff shall file a Second Amended Complaint alleging Federal/FLSA claims for overtime for the purpose of confirming such claims are at issue and are being released." (Settl. Agr. ¶ II.) The Court's Order ruling on the parties' joint motion in regard to this, [see Doc. No. 34], is being docketed concurrently with this Order.

**DISCUSSION**

When the parties reach a settlement agreement prior to class certification, the court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the court must first assess whether a class exists, and second, determine whether the proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Id. (citations omitted). Accordingly, in the present case, the Court will first examine the propriety of class certification, followed by the fairness of the settlement agreement, and will then address the questions of class counsel and class notice.

**I.     Class Certification**

A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the prerequisites of Rule 23(a). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). In the present case, Plaintiff Singer seeks to certify the following two classes. First, the Non-Exempt Settlement Group will consist of:

> all current and former non-exempt employees employed by Becton, Dickinson, and Company and Med-Safe Systems, Inc. (collectively, "the Company") at Med-Safe Systems, Inc. ("Med-Safe") facility in Oceanside, California, at any time between March 27, 2004, through ten (10) days after preliminary approval of the proposed settlement (the "Class Period"), who have not already settled any claims they may have had against the Company or pursued and recovered a remedy with the Division of Labor Standards Enforcement relating to their employment with the Company, and who claim they were not provided with rest and meal breaks or pay in lieu thereof, not paid overtime, not paid for all hours worked, not paid reporting time pay, and provided with inaccurate paycheck stubs and seek to recover overtime pay, pay for hours worked, expenses, premium pay, penalties, interest, attorney's fees and costs as well as restitution under California law.

(Settl. Agr. ¶ I.) Second, the Vacation Settlement Group will consist of:

> all current and former exempt and/or non-exempt employees employed by the Company at the Med-Safe facility in Oceanside, California, at any time during the Class Period who have not already settled any claims they may have had against the Company or pursued and recovered a remedy with the Division of Labor Standards Enforcement relating to their employment with the Company, and who may not have been provided with all vacation wages and seek to recover vacation pay, penalties, interest, attorney's fees and costs as well as restitution under California law.

(Id.)

A.     Rule 23(a) requirements

Rule 23(a) establishes four prerequisites for class action litigation, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FED. R. CIV. P. 23(a); see also

Staton, 327 F.3d at 953. The Court will examine each of these requirements in turn.

### *1.  Numerosity*

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). In the present case, there are approximately 258 persons in the Vacation Settlement Group and an estimated 251 persons in the Non-Exempt Settlement Group. (Hollis Decl. ¶¶ 20-21.) They are far too numerous to be joined as plaintiffs in this lawsuit. Accordingly, the numerosity requirement is met in this case.

### *2.  Commonality*

The commonality requirement is met if "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The commonality requirement is construed "permissively." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). All questions of fact and law need not be common, but rather "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. In the present case, both the named plaintiff and the purported class members seek identical remedies for Defendants' alleged conduct in: (1) operating the "use-it-or-lose-it" vacation policy, and (2) failing to pay for all hours worked and for meal and rest premiums. (Hollis Decl. ¶¶ 16-21.) Accordingly, the commonality requirement is met.

### *3.  Typicality*

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The representative claims are "typical" if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." Hanlon, 150 F.3d at 1020. In the present case, both the named plaintiff and the purported class members have suffered from the same allegedly wrongful conduct by Defendants at the Oceanside facility, California. (Hollis Decl. ¶¶ 9-12, 15-21.) Accordingly, because the class is so narrowly-defined, the typicality requirement is met in this case.

### *4.  Adequacy of representation*

Finally, Rule 23(a) also requires that the representative parties be able to "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Ninth Circuit finds representation

1  adequate if the plaintiffs: (1) "do not have conflicts of interest with the proposed class" and (2) are
2  "represented by qualified and competent counsel." Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1185 (9th
3  Cir. 2007). At the heart of this requirement is the "concern over settlement allocation decisions."
4  Hanlon, 150 F.3d at 1020.

5        In the present case, there appears to be no allocation issues, and Plaintiff Singer's counsel is
6  qualified and competent. First, the allocation is reasonable because the distribution between the two
7  classes is based on the total amount of wages not paid and vacation time forfeited. (See Settl. Agr. ¶
8  6.B.) Moreover, the $25,000.00 service enhancement award to Plaintiff Singer appears to be
9  reasonable in light of his efforts on behalf of the Settlement Group Members. (See Hollis Decl. ¶ 25.)
10 Second, Plaintiff's counsel has extensive experience, having represented employees and employers
11 in employment litigation matters since 1995, and having acted as class counsel in numerous
12 employment law cases. (See id. ¶¶ 2-6, 26-27.) Accordingly, the adequacy of representation
13 requirement is met in this case.

14       For the foregoing reasons, Plaintiff has satisfied the prerequisites of Rule 23(a).

15     B.    Rule 23(b)(3) requirements

16       In the present case, Plaintiff proposes certification pursuant to Rule 23(b)(3). (See Pl. Motion
17 for Prelim. Approval, at 22-23.) Rule 23(b)(3) requires the court to find that: (1) "the questions of law
18 or fact common to class members predominate over any questions affecting only individual members,"
19 and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the
20 controversy." These requirements can be labeled the "predominance" and "superiority" requirements.

21       *1.    Predominance*

22       The predominance inquiry tests "'whether proposed classes are sufficiently cohesive to warrant
23 adjudication by representation.'" Hanlon, 150 F.3d at 1022 (quoting Amchem Products, Inc. v.
24 Windsor, 521 U.S. 591, 623 (1997)). This analysis requires more than proof of common issues of law
25 or fact. Id. Rather, the common questions must "'present a significant aspect of the case [that] they
26 can be resolved for all members of the class in a single adjudication.'" Id. (citation omitted).

27       "When the claim is that an employer's policy and practices violated labor law, the key question
28 for class certification is whether there is a consistent employer practice that could be a basis for

1  consistent liability." Kamar v. Radio Shack Corp., 254 F.R.D. 387, 399 (C.D. Cal. 2008). Class
2  certification is usually appropriate where "liability turns on an employer's uniform policy that is
3  uniformly implemented, since in that situation predominance is easily established." Id. In similar
4  cases, common claims were found to predominate where a company-wide policy governed how
5  employees spent their time and/or how they were paid. See, e.g., Wright v. Linkus Enterprises, Inc.,
6  259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance, despite minor factual difference
7  between individual class members, where the case involved "alleged policies that required class
8  members to work without compensation, meal and rest periods, and/or reimbursement for expenses");
9  In re Wells Fargo Home Mortg. Overtime Pay Litig., 527 F. Supp. 2d 1053, 1065-68 (N.D. Cal. 2007)
10 (finding predominance where, as a general matter, the defendant's policy and practice regarding
11 compensation and exemption was uniform for all putative class members).

12 In the present case, the alleged claims stem from Defendants' uniform treatment of the putative
13 class members at the Oceanside facility, California. Specifically, the Non-Exempt Claims primarily
14 concern the fact that Defendants utilized an "auto-deduction" feature in their time/pay system, which
15 automatically deducted 30 minutes of time from non-exempt employees' time for meal period. (Hollis
16 Decl. ¶ 9.) During the applicable class period, all of the Non-Exempt Settlement Group Members were
17 subject to this policy. (Id. ¶¶ 9-12.) Likewise, the Vacation Claims concern Defendants' use of an
18 allegedly illegal "use-it-or-lose-it" vacation policy, whereby certain employees forfeited some of their
19 accrued vacation wages. (Id. ¶ 9.) During the applicable class period, all of the qualifying Vacation
20 Settlement Group Members were subject to this policy. (Id. ¶¶ 9-12.) Accordingly, because both
21 classes were subject to these uniform policies, the predominance requirement is met in this case.

22     *2. Superiority*

23 The superiority inquiry requires determination of "whether objectives of the particular class
24 action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023 (citation omitted).
25 Notably, the class-action method is considered to be superior if "classwide litigation of common issues
26 will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d
27 1227, 1234 (9th Cir. 1996) (citation omitted). In the present case, the potential recoveries for Non-
28 Exempt Settlement Group Members range from $734.00 to $4,225.00, while each Vacation Settlement

1  Group Member can potentially recover up to $4,700.00. (Hollis Decl. ¶¶ 20-21.) In light of these
2  relatively small amounts of money, many claims likely could not be successfully asserted individually
3  because, "[e]ven if efficacious, these claims would not only unnecessarily burden the judiciary, but
4  would prove uneconomic for potential plaintiffs." See Hanlon, 150 F.3d at 1023. Accordingly, a class
5  action constitutes a superior method of adjudication.

6  For the foregoing reasons, Plaintiff has satisfied the requirements of Rule 23(b)(3).
7  Accordingly, the Court **GRANTS** preliminary certification to both classes for the purposes of the
8  proposed settlement. The Court, however, may review this finding at the Final Approval Hearing.

9  **II.   The Settlement**

10  Rule 23(e) requires the court to determine whether a proposed settlement is "'fundamentally
11  fair, adequate, and reasonable.'" Staton, 327 F.3d at 959 (quoting Hanlon, 150 F.3d at 1026). To make
12  this determination, the court must consider a number of factors, including: (1) the strength of
13  plaintiff's case; (2) "'the risk, expense, complexity, and likely duration of further litigation;'" (3) "the
14  risk of maintaining class action status throughout the trial;" (4) the amount offered in settlement; (5)
15  the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of
16  counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to
17  the proposed settlement. See id. (citations omitted). In addition, the settlement may not be the product
18  of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th
19  Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

20  Given that some of these factors cannot be fully assessed until the Court conducts the Final
21  Approval Hearing, "'a full fairness analysis is unnecessary at this stage.'" See Alberto v. GMRI, Inc.,
22  252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted). Rather, at the preliminary approval stage, the
23  Court need only review the parties' proposed settlement to determine whether it is within the
24  permissible "range of possible judicial approval" and thus, whether the notice to the class and the
25  scheduling of the formal fairness hearing is appropriate. See 4 WILLIAM B. RUBENSTEIN ET AL.,
26  NEWBERG ON CLASS ACTIONS § 11:25 (4th ed. 2002) (citations omitted); see also Wright, 259 F.R.D.
27  at 472 (citation omitted); Alberto, 252 F.R.D. at 666 (citation omitted).

28  //

A.  <u>The strength of Plaintiff's case, the risk, expense, and likely duration of further litigation, and the risk of maintaining class action status throughout the trial</u>

Plaintiff asserts that the proposed settlement is both fair and reasonable in light of Defendants' available legal and factual grounds for defending against the asserted claims. For example, Defendants contended that they made meal periods available to non-exempt employees and that the non-exempt employees took compliant meal periods. (Hollis Decl. ¶ 21.) Moreover, Plaintiff admitted that there was "uncertainty surrounding meal and rest periods" that could have ultimately barred or limited any recovery on "late," "short," or "missed" meal and rest period class claims. (<u>Id.</u>) Specifically, Plaintiff was concerned that "the California Supreme Court would adopt Defendants' construction of the meal period provision–that is that all it [sic] had to do was make a meal period available." (<u>Id.</u>)

In addition, Plaintiff recognized that until mid-2007 there was legal uncertainty as to whether meal and rest premiums were wages or penalties, which could have ultimately limited the extent of Defendants' liability under Sections 203 and 226 of the Labor Code, as well as any accompanying PAGA penalties. (<u>Id.</u>) Finally, in deciding to settle, Plaintiff took into consideration that if he did not settle, he would be required to take the risk and expense of bringing a class certification motion in August 2009, and subsequently the risk and expense of trial and any subsequent appeal. (<u>Id.</u>) Taken together, these considerations weigh in favor of preliminarily approving the proposed settlement.

B.  <u>The amount offered in settlement</u>

In the present case, the proposed settlement yields a Payout Fund of $619,167.00 to the Settlement Group Members, which constitutes 28.84% of the claimed losses. (<u>See</u> Hollis Decl. ¶ 19.) Broken down by class, the Vacation Settlement Group Members will be able to recover approximately 110% of their claimed losses, while the Non-Exempt Settlement Group Members will be able to recover approximately 26% of their claimed losses. (<u>See</u> <u>id.</u> ¶¶ 19-21.) Such a disparity between recoveries appears to be justified by the comparative strengths of the claims. As noted above, Plaintiff had a number of reservations about the Non-Exempt Claims due to the factual and legal uncertainties associated with those claims. (<u>Id.</u>) On the other hand, Defendants' liability for the Vacation Claims was more straightforward, which is why those claims were not discounted. (<u>Id.</u> ¶¶ 19-20.)

In light of the uncertainties involved with respect to the Non-Exempt Claims, the Court finds the amounts offered in settlement to be adequate, at least at this stage of the proceedings. <u>See, e.g.</u>,

1  Glass v. UBS Fin. Serv., Inc., No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007)
2  (finding settlement of a wage and hour class action for 25 to 35% of the claimed damages to be
3  reasonable in light of the uncertainties involved in the litigation). Moreover, Plaintiff notes that the
4  Settlement Group Members will further benefit from the employment policy changes that Defendants
5  enacted due to this lawsuit. For example, since this lawsuit was instituted, Defendants have apparently
6  reviewed the policies and procedures utilized at the Oceanside facility, conducted an in-depth review
7  of all wage statements and payroll records, and implemented certain auditing tools and training efforts
8  to ensure ongoing compliance with California law. (See Hollis Decl. ¶ 26.) Notably, Defendants
9  appeared to have ceased the use of the challenged "auto-deduction" policy and have also implemented
10 a system to pay meal premiums for non-compliant meal periods. (Id.) Accordingly, at least at this
11 stage of the proceedings, the amount offered in settlement and the non-monetary benefits to the
12 purported class members weigh in favor of preliminary approval.

13        C.        The extent of discovery completed and the stage of the proceedings

14        In the context of class action settlements, as long as the parties have sufficient information to
15 make an informed decision about settlement, "'formal discovery is not a necessary ticket to the
16 bargaining table.'" Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting
17 In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir.1982)).

18        In the present case, parties appear to have engaged in substantial and exhaustive informal and
19 formal discovery. First, even before the lawsuit was initiated, Plaintiff's counsel apparently engaged
20 in a "considerable amount of investigative work to determine the size and scope of the claims." (Hollis
21 Decl. ¶ 7.) Plaintiff's counsel also filed a letter with the LWDA and Defendants, outlining the specific
22 facts and theories upon which Plaintiff relied. (Id.) Subsequently, two-day depositions were taken of
23 Plaintiff Singer and Defendant Med-Safe's person most knowledgeable (Nathan Miller) about the
24 class claims. (Id. ¶ 11.) In addition, according to Plaintiff, over 325 discovery responses were prepared
25 and assessed, and more than 2,300 pages of documents were produced and analyzed, in the initial
26 disclosures that ensured. (Id.)

27        Finally, and most importantly, the parties engaged in settlement discussions, which culminated
28 in a formal, full-day mediation session on May 21, 2009 before a neutral mediator, Joel M. Grossman,

1  Esq., who is highly experienced in wage and hour matters such as the claims in this case. (Id. ¶ 13.)
2  The proposed settlement in this case is the direct result of Mr. Grossman's mediator proposal, which
3  was made to resolve the parties' impasse. (Id. ¶ 14.) Moreover, after the agreement to settle was
4  reached, the parties spent an additional 5 months drafting and fine-tuning all of the settlement
5  documents. (Id.) Accordingly, the parties' extensive investigation, discovery, and subsequent
6  settlement discussions weigh in favor of preliminary approval.

7       D.      The experience and views of counsel

8  As already noted, Plaintiff's counsel has extensive experience, having represented employees
9  and employers in employment litigation matters since 1995, and having acted as class counsel in
10 numerous employment law cases. (See Hollis Decl. ¶¶ 2-6, 26-27.) Accordingly, because counsel
11 believes the present settlement is both fair and adequate, especially in light of some of the factual and
12 legal uncertainties, this also weighs in favor of preliminary approval.

13       E.      Collusion between the parties

14 The collusion inquiry addresses the possibility the agreement is the result of either overt
15 misconduct by the negotiators or improper incentives of certain class members at the expense of other
16 members of the class. Stanton, 327 F.3d at 960. In the present case, because there is no evidence of
17 overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves
18 to self-interested action.

19 First, as already noted, the distribution between the two classes does not appear to be the result
20 of collusion between the parties. Rather, both the distribution and the disparity in ultimate recovery
21 appear to be reasonable in light of the number of affected class members in each class and the merits
22 of the respective claims. (See Hollis Decl. ¶¶ 19-21.)

23 The $25,000 incentive award for Plaintiff Singer also does not to appear to be the result of
24 collusion. The Court evaluates incentive awards using "'relevant factors including the actions the
25 plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from
26 those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation ... and
27 reasonable fears of workplace retaliation.'" Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142
28 F.3d 1004, 1016 (7th Cir. 1998)). In the present case, Plaintiff Singer has protected the interests of the

class and exerted considerable time and effort in maintaining this action for the past two-and-a-half years, conducting extensive informal discovery, and engaging in day-long settlement negotiations with a respected mediator. (Hollis Decl. ¶ 25.) The two classes have benefitted from these actions by, *inter alia*, receiving a settlement constituting 110% recovery on the Vacation Claims and the substantive changes in Defendants' policies and procedures at the Oceanside facility regarding the Non-Exempt Claims. (Id. ¶ 26.) Moreover, Singer has agreed not to seek an award of more than $750.00 from the Payout Fund. (Settl. Agr. ¶ 6.B.)

Finally, the attorneys' fees also do not appear to be the result of collusion. Plaintiffs may simultaneously negotiate the merits and attorneys' fees. Stanton, 327 F.3d at 971. In the present case, the settlement agreement provides that Plaintiff's counsel, the firm of GraceHollis LLP, would recover an award of litigation costs up to $11,500.00 and attorneys' fees up to $333,333.00. (Settl. Agr. ¶ 7.) With respect to the litigation costs, seeing as Plaintiff's counsel has already incurred costs in the amount of $12,600, the Court finds the award to be reasonable. (See Hollis Decl. ¶ 26.) However, the Court does have reservations about the substantial recovery of attorneys' fees sought by Plaintiff's counsel. Plaintiff's counsel contends that recovery of $333,000.00, which constitutes 33% of the Gross Fund Value and a whopping 54% of the Payout Fund, is typical for it and for similar cases.[4] (See id. ¶ 27 (citing cases where courts have awarded anywhere between 30 and 45% to class counsel)).

According to the Ninth Circuit, "the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable." Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000) (citation omitted). The Ninth Circuit has also indicated that an explanation is necessary when the district court departs from the "benchmark" of 25% of the recovery. Id. at 1256-57. The Court, however, need not decide this issue at this time. Accordingly, at this point, the Court only notes that the 33% recovery does not appear to be the result of collusion.

---

[4] Plaintiff's counsel also notes that its "lodestar"–i.e., the amount billed to date–already equals $315,904.00 (Hollis Decl. ¶ 26.) The "lodestar," however, is only a cross-check on the reasonableness of the fee award. See, e.g., Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002) ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement.").

1  For the foregoing reasons, the Court hereby **GRANTS** preliminary approval of the proposed settlement. The Court, however, reserves judgment on the reasonableness of the attorneys' fees for the Final Approval Hearing.

### III.  Appointing Class Counsel

Traditionally, the choice of counsel has been left to the parties, "whether they sue in their individual capacities or as class representatives." In re Cavanaugh, 306 F.3d 726, 734 (9th Cir. 2002) (citation omitted). In the present case, as already noted, Plaintiff's counsel has extensive experience in employment class actions. (See Hollis Decl. ¶¶ 2-6, 26-27.) Accordingly, because Plaintiff's counsel appears to be competent to represent the classes, the Court **GRANTS** Plaintiff's motion to appoint the firm of GraceHollis LLP as class counsel.

### IV.  Approving Class Notice

The class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In addition, the class notice must satisfy the content requirements of Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

#### A.  Content of the notice

In the present case, the content of the proposed notice is adequate. It provides: (1) information on the meaning and nature of the two different classes; (2) the terms and provisions of the proposed settlement; (3) the relief Settlement Group Members will be entitled to, including a specific estimate of the amount to be paid to each eligible member; (4) the costs and fees to be paid out of the Gross Fund Value; (5) the procedures and deadlines for submitting claim forms, objections, and/or requests for exclusion; and (6) the date, time, and place of the Final Approval Hearing. (See generally [Proposed] Class Notice, attached to Settl. Agr., Ex. 1.)

//

B.  Method of notice

Here, subject to the revisions set forth below in Part IV.C, the proposed method of notice is reasonable. Within 20 days after entry of this Order, the Claims Administrator will mail individual notices, together with claim forms, to the members of the settlement classes via first-class regular U.S. mail using the most current mailing address information available from Defendants' payroll records. (Settl. Agr. ¶ 11(c)(2).) Prior to mailing the notices, the Claims Administrator shall conduct a national change of address search. (Id.) Moreover, for any notices returned within 30 days of original mailing, the Class Administrator shall promptly attempt to determine a correct address using that person's social security number. (Id.) Finally, no later than 10 court days prior to the filing of Plaintiff's Motion for Final Approval of the Settlement, the Class Administrator is required to provide counsel for the parties with "a due diligence declaration, setting forth, *inter alia*, its compliance with the mailing and other administrative obligations required by [the Settlement Agreement]." (Id. ¶ 9.I.)

Any member wishing to object to the proposed settlement must file with the District Court and serve on counsel for the parties a written statement to that effect. (Id. ¶ 11(d)(1).) Any such objection must be postmarked no later than 30 calendar days after the date the notice was originally mailed, or 15 calendar days after the notice is re-mailed, whichever is later. (Id.) Likewise, any member wishing to be excluded from the proposed settlement must send a request for exclusion to the Claims Administrator no later than 30 calendar days after the date the notice was originally mailed, or 15 calendar days after the notice is re-mailed, whichever is later. (Id. ¶ 11(d)(2).)

Finally, any Settlement Group Member wishing to receive an award pursuant to the proposed settlement must sign and return the attached claim form to the Claims Administrator. (Id. ¶ 11(h).) All claim forms must be postmarked no later than 45 calendar days after the date the claim form was originally mailed, or 15 calendar days after it was re-mailed, whichever is later. (Id.) If any member disagrees with the number of work weeks and/or accrued vacation time and final rate of pay set forth on his or her Claim Form, he or she must submit to the Claims Administrator documentation with the Claim Form that supports his or her disagreement. (Id.) Finally, any defective claim form that was timely submitted will be returned to that person with an explanation of the defects. (Id.) That person must then cure the defects and return the claim form to the Claims Administrator postmarked no later

1  than 10 calendar days from the date the defective claim form and deficiency notice were mailed. (Id.)

2      C.    <u>Required revisions to the class notice</u>

3  In order to assure that Settlement Group Members have sufficient time in which to submit their
4  objections, requests for exclusions, or claim forms, the Court **ORDERS** that the following revisions
5  be made to the proposed class notice:

6      (1)    The deadline for submitting objections shall be extended by 15 days, such that any
7  objection must now be <u>postmarked no later than **45 calendar days** after the date the notice was
8  originally mailed, or 15 calendar days after the notice is re-mailed, whichever is later</u>.

9      (2)    The deadline for submitting requests for exclusion shall be extended by 15 days, such
10 that any request for exclusion must now be <u>postmarked no later than **45 calendar days** after the date
11 the notice was originally mailed, or 15 calendar days after the notice is re-mailed, whichever is later</u>.

12     (3)    The deadline for submitting claim forms shall be extended by 15 days, such that all of
13 the signed claim forms must now be <u>postmarked no later than **60 calendar days** after the date the
14 claim form was originally mailed, or 15 calendar days after it was re-mailed, whichever is later</u>. If a
15 claim form that was timely submitted is found to be defective, the re-submitted claim form must still
16 be postmarked no later than 10 calendar days from the date the defective claim form and deficiency
17 notice were mailed. (See Settl. Agr. ¶ 11(h).)

18 **V.   Setting Final Approval Hearing**

19 Finally, the Court sets the Final Approval Hearing for Monday, **April 19, 2010 at 10:30 a.m.**
20 Plaintiff shall file his Motion for Final Approval of the Settlement, as well as any motions for fees
21 award and enhancement award, on or before **April 5, 2010**.

22                 **CONCLUSION**

23 For the foregoing reasons, IT IS HEREBY ORDERED THAT:

24     (1)    Plaintiff's request for preliminary certification of both classes for purposes of the
25 proposed settlement is GRANTED;

26     (2)    Plaintiff's request for preliminary approval of the proposed settlement is GRANTED;

27     (3)    Plaintiff's request to have the firm of GraceHollis LLP to be appointed class counsel
28 is GRANTED;

(4) The form and manner of giving notice of the proposed settlement to the classes is APPROVED, subject to the required revisions set forth in Part IV.C above; and

(5) The Final Approval Hearing on the proposed settlement shall be held on Monday, April 19, 2010 at 10:30 a.m. Plaintiff shall file his Motion for Final Approval of the Settlement, as well as any motions for fees award and enhancement award, on or before April 5, 2010.

**IT IS SO ORDERED.**

DATED: December 9, 2009

_____
IRMA E. GONZALEZ, Chief Judge
United States District Court