# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRKLAND SINGER, individually and on behalf of Current and Former California Employees of Beckton, Dickinson and Company and Med-Safe Systems, Inc.,<br><br>          Plaintiff,<br>vs.<br><br>BECTON DICKINSON AND COMPANY; MED-SAFE SYSTEMS, INC., doing business as BD Medical; and DOES 1-10, inclusive,<br><br>          Defendants. | CASE NO. 08-CV-821 - IEG (BLM)<br><br>ORDER GRANTING:<br><br>(1) CLASS CERTIFICATION;<br><br>(2) FINAL APPROVAL OF CLASS SETTLEMENT;<br><br>(3) REQUEST FOR ATTORNEYS' FEES AND COSTS; and<br><br>(4) REQUEST FOR AN ENHANCEMENT AWARD.<br><br>[Doc. Nos. 45, 46] |

  Currently before the Court are Plaintiff Kirkland Singer's ("Singer") Motion for Final Approval of Settlement and Motion for an Award of Class Representative Enhancement Award and Attorneys' Fees and Costs. For the reasons set forth below, the Court GRANTS both motions.

## BACKGROUND

  The facts of this case are known to the Court and the parties and need not be repeated herein.

**I. Procedural Background**

  On March 27, 2008, Plaintiff filed a purported class action against Defendants on behalf of himself and other current and former employees in the Superior Court for the County of San Diego.

[Doc. No. 1]. Defendants removed the case to this Court on May 6, 2008. [Id.] On August 11, 2008, following the Court's Order on Defendants' Motion to Strike and Motion to Dismiss, Plaintiff filed a First Amended Complaint ("FAC"). [Doc. No. 16].

In his FAC, Plaintiff alleged wage and hour violations over a class period extending back to March 27, 2004, and sought various forms of relief such as unpaid wages, including statutory wages for meal periods and rest breaks, vacation wages, interest, waiting time penalties, PAGA penalties, restitution, damages, injunctive and other equitable relief, and attorneys' fees and costs under various provisions of the California Labor Code and the applicable wage orders of the Industrial Wage Commission. Primarily, Plaintiff alleged as class claims that: (1) Defendants had an illegal "use-it-or-lose-it" policy, whereby employees forfeited accrued vacation wages ("Vacation Claims"); and (2) Defendants did not pay non-exempt employees all wages due and owing, including meal and rest period premiums, overtime, reporting time, and minimum wages ("Non-Exempt Claims").[1]

Subsequently, according to Plaintiff, parties engaged in extensive informal and formal discovery, investigation, and pre-trial motion practice concerning the facts and the law. As part of those efforts, Plaintiff was subjected to a two-day deposition, and Plaintiff's counsel conducted a two-day deposition of Defendant Med-Safe's person most knowledgeable (Nathan Miller) about policies and practices at its Oceanside facility relating to reporting time pay, meal and rest periods, vacation/paid-time off, timekeeping, and payroll.

Finally, in April 2009, the parties agreed to engage in settlement discussions, which culminated in a formal, full-day mediation session on May 21, 2009 before a respected neutral mediator, Joel M. Grossman, Esq., who is highly experienced in wage and hour matters such as the claims in this case. Although the May 21, 2009 mediation session resolved much of the dispute, it did not result in a settlement. Mr. Grossman therefore made a mediator's proposal to resolve the parties' impasse, which the parties accepted on June 2, 2009. Subsequently, the parties worked for five months to prepare the present class settlement agreement, and a separate settlement agreement concerning Plaintiff's individual misclassification claim.

---

[1] Plaintiff also alleged that Defendants misclassified him as an exempt employee between February 24, 2004 and April 30, 2005. Plaintiff's misclassification claim, however, was alleged solely as an individual claim, and not on the behalf of the purported class.

## II.     The Proposed Settlement

Pursuant to the proposed settlement, Defendants agreed to pay up to One Million Dollars ("Gross Fund Value") to compensate the Vacation Settlement Group Members and Non-Exempt Settlement Group Members (collectively, "Settlement Group Members"), including Plaintiff, for their alleged unpaid wages, interest, and penalties, and to provide for the accompanying costs, penalty payments, and fees. Specifically, out of the Gross Fund Value: (1) $3,000.00 has been allocated to be paid to the California Labor Workforce Development Agency ("LWDA") for PAGA penalties pursuant to Labor Code Section 2699; (2) $8,000.00 will be paid to Simpluris, Inc. for the claim administration process; (3) Plaintiff Singer is entitled to recover a service enhancement award of up to $25,000.00 for his service to the Settlement Group Members; (4) the firm of GraceHollis LLP would recover an award of litigation costs up to $11,500.00 and attorneys' fees up to $333,333.00; and (5) Defendants will pay the employer's portion of payroll taxes attributable to the "wage" component of the individual settlement awards.

Thereafter, $548,775.00 will be allocated to the Non-Exempt Settlement Group Members ("Non-Exempt Settlement Fund") and $73,392.00 will be allocated to the Vacation Settlement Group Members ("Vacation Settlement Fund"), for a combined maximum of $622,167.00 to be paid out as Net Fund Value. Out of this, $3,000.00 will be paid to the LWDA for PAGA penalties, leaving $619,167.00 to be paid out to the Settlement Group Members ("Payout Fund"). Under the terms of the proposed settlement, all Settlement Group Members who do not opt-out of the settlement, including Plaintiff Singer, will be eligible to submit a Claim Form for a settlement award.[2]

The settlement agreement contemplated that there would be approximately 258 persons in the Vacation Settlement Group, and 98 of these would be eligible to claim funds from the Vacation Settlement Fund. To be eligible, each purported class member's employment with Defendants must have ended between March 27, 2004 and December 31, 2006. The Vacation Settlement Awards will be based on 110% of actual vacation wages purportedly owed, calculated by multiplying each Vacation Settlement Member's amount of accrued, unpaid vacation time by that person's final hourly rate of pay. For each Vacation Settlement Award, 50% shall be allocated to "wages," 40% shall be

---

[2] Plaintiff Singer, however, cannot recover more than $750.00 from the Payout Fund.

1  allocated to "penalties," and 10% shall be allocated to "interest." Of the 50% allocated to "wages,"
2  payroll deductions will be made for state and federal withholding taxes and any other applicable
3  payroll deductions owed by Defendants as a result of the payment.

4      The settlement agreement also contemplated that an estimated 251 persons in the Non-Exempt
5  Settlement Group would be eligible to claim funds from the Non-Exempt Settlement Fund. The
6  payment of Non-Exempt Settlement Awards will be calculated by assigning a certain dollar value to
7  each week of work by each employee in a non-exempt position during the class period. For each Non-
8  Exempt Settlement Award, 50% shall be allocated to "wages," 40% shall be allocated to "penalties,"
9  and 10% shall be allocated to "interest." Of the 50% allocated to "wages," payroll deductions will be
10 made for state and federal withholding taxes and any other applicable payroll deductions owed by
11 Defendants as a result of the payment.

12     In exchange for these awards, the settlement agreement provides that both Vacation Settlement
13 Group Members and Non-Exempt Settlement Group Members will release their respective claims
14 against Defendants for the applicable class periods. Plaintiff Singer furthermore will release all claims
15 against Defendants relating to his employment and separation therefrom, not just the non-exempt and
16 vacation claims. Moreover, the settlement agreement contemplates that Plaintiff's Second Amended
17 Complaint ("SAC"), alleging federal/FLSA claims for overtime, will be deemed filed and dismissed
18 as of final approval of the proposed settlement.[3]

19     Finally, the proposed settlement provides that it is a "claims made settlement," and therefore
20 any unclaimed share of the Payout Fund shall not become part of the final payout to the class
21 members, but rather will be retained by Defendants. However, if the total payout to the class members
22 is less than 50% of the Payout Fund, the claimed awards of all Settlement Group Members will be
23 reapportioned so that at least 50% of the Payout Fund is paid out.

24 **III.    Preliminary approval of the settlement and reaction of the class members**

25     On December 9, 2009, the Court preliminarily certified the two classes for settlement purposes,

---

[3] The settlement agreement provides that, "[t]o effectuate the Non-Exempt Released Federal Claims by Non-Exempt Settlement Class Members, the Named Plaintiff shall file a Second Amended Complaint alleging Federal/FLSA claims for overtime for the purpose of confirming such claims are at issue and are being released." The Court already granted the parties' joint motion in this regard on December 9, 2009. [See Doc. No. 40; see also Doc. No. 44.]

1 appointed class counsel, granted preliminary approval of the settlement, and ordered Plaintiff to
2 disseminate notice of the settlement to class members. [Doc. No. 42]. On December 29, 2009, the
3 Claim Administrator mailed the notice of class settlement to a total of 266 current and former
4 employees in one or both of the Settlement Groups. (Tittle Decl. ¶¶ 8-9.) The notice provided class
5 members with an opportunity to file a claim for monetary relief, opt out of the settlement, or object
6 to the settlement. (Id., Ex. A.) Out of the 266 notice packets mailed, 87 were returned by the post
7 office. (Id. ¶ 10.) After conducting an additional search for updated addresses, 86 of those notice
8 packets were re-mailed. (Id.) Ultimately, 29 notice packets were undeliverable because the Claim
9 Administrator was unable to find a better address. (Id.)

10 The Claim Administrator received a total of 175 completed Class Forms, out of which only
11 174 were valid. (Id. ¶ 11.) The 174 valid claims received represented 65.41% of the entire Settlement
12 Class. (Id.) The valid claims received in the Vacation Class represented 49.29% of the Vacation
13 Settlement Class and 50.81% of the gross amount claimed. (Id.) The valid claims received in the Non-
14 Exempt Class represented 66.02% of the Non-Exempt Settlement Class and 81.78% of the gross
15 amount claimed. (Id.) There were no objections or requests for exclusion received. (Id. ¶¶ 13-14.)

**DISCUSSION**

17 When the parties reach a settlement agreement prior to class certification, the court is under
18 an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and
19 the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the
20 court must first assess whether a class exists, and second, determine whether the proposed settlement
21 is "'fundamentally fair, adequate, and reasonable.'" Id. (citations omitted). Accordingly, in the present
22 case, the Court will first examine the propriety of class certification, followed by the fairness of the
23 settlement agreement, and will then address the questions of attorneys' fees and enhancement award.

24 **I. Class certification**

25 A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the prerequisites of Rule
26 23(a). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule
27 23(b)(3). In the present case, the Court had previously preliminarily certified the following two
28 classes: the Non-Exempt Settlement Group and the Vacation Settlement Group. See Singer v. Becton

1 Dickinson & Co., No. 08-CV-821-IEG (BLM), 2009 WL 4809646, at **3-6 (S.D. Cal. Dec. 9, 2009). At that time, the Court concluded that the proposed classes satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). See id. at **3-5. The Court also found that the proposed classes satisfied the predominance and superiority requirements of Rule 23(b)(3). See id. at **5-6. Having reviewed those elements again, the Court adopts its prior analysis in this regard. Accordingly, because Plaintiff has satisfied the requirements of both Rule 23(a) and Rule 23(b)(3), the Court **GRANTS** certification of both classes for the purposes of settlement.

## II.     The Settlement

Federal Rule of Civil Procedure 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Staton, 327 F.3d at 959 (quoting Hanlon, 150 F.3d at 1026). To make this determination, the court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) "'the risk, expense, complexity, and likely duration of further litigation;'" (3) "the risk of maintaining class action status throughout the trial;" (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See id. (quoting Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003)). In addition, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

> A.     <u>The strength of Plaintiff's case, the risk, expense, and likely duration of further litigation, and the risk of maintaining class action status throughout the trial</u>

Plaintiff asserts that the proposed settlement is both fair and reasonable in light of Defendants' available legal and factual grounds for defending against the asserted claims. For example, Defendants contended that they made meal periods available to non-exempt employees and that the non-exempt employees took compliant meal periods. Moreover, Plaintiff admitted that there was "uncertainty surrounding meal and rest periods" that could have ultimately barred or limited any recovery on "late," "short," or "missed" meal and rest period class claims. Specifically, Plaintiff was concerned the California Supreme Court would adopt Defendants' construction of the meal period provision–i.e., that all that Defendants had to do was make a meal period available.

In addition, Plaintiff recognized that until mid-2007 there was legal uncertainty as to whether meal and rest premiums were wages or penalties, which could have ultimately limited the extent of Defendants' liability under Sections 203 and 226 of the Labor Code, as well as any accompanying PAGA penalties. Finally, in deciding to settle, Plaintiff took into consideration that if he did not settle, he would be required to take the risk and expense of bringing a class certification motion in August 2009, and subsequently the risk and expense of trial and any subsequent appeal. In light of these admitted weaknesses, the Court agrees that the actual recovery through settlement confers substantial benefits on the class that outweigh the potential recovery through full adjudication.

### B. The amount offered in settlement

In the present case, the proposed settlement yields a Payout Fund of $619,167.00 to the Settlement Group Members, which constitutes 28.84% of the claimed losses. Broken down by class, the Vacation Settlement Group Members will be able to recover approximately 110% of their claimed losses, while the Non-Exempt Settlement Group Members will be able to recover approximately 26% of their claimed losses. Such a disparity between recoveries appears to be justified by the comparative strengths of the claims. As noted above, Plaintiff had a number of reservations about the Non-Exempt Claims due to the factual and legal uncertainties associated with those claims, which is why those claims were discounted. On the other hand, Defendants' liability for the Vacation Claims was more straightforward, which is why those claims were not discounted.

In light of the uncertainties involved with respect to the Non-Exempt Claims, the Court finds the amounts offered in settlement to be adequate. See, e.g., Glass v. UBS Fin. Serv., Inc., No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of a wage and hour class action for 25 to 35% of the claimed damages to be reasonable in light of the uncertainties involved in the litigation). Moreover, Plaintiff notes that the Settlement Group Members will further benefit from the employment policy changes that Defendants enacted due to this lawsuit. For example, since this lawsuit was instituted, Defendants have apparently reviewed the policies and procedures utilized at the Oceanside facility, conducted an in-depth review of all wage statements and payroll records, and implemented certain auditing tools and training efforts to ensure ongoing compliance with California law. Notably, Defendants appear to have ceased the use of the challenged "auto-

deduction" policy and have also implemented a system to pay meal premiums for non-compliant meal periods. Accordingly, the Court finds the amount offered in settlement and the non-monetary benefits to the class members weigh in favor of granting final approval of the settlement.

### C. The extent of discovery completed and the stage of the proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'" Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir.1982)).

In the present case, parties appear to have engaged in substantial and exhaustive informal and formal discovery. First, even before the lawsuit was initiated, Plaintiff's counsel apparently engaged in a considerable amount of investigative work to determine the size and scope of the claims. Plaintiff's counsel also filed a letter with the LWDA and Defendants, outlining the specific facts and theories upon which Plaintiff relied. Subsequently, two-day depositions were taken of Plaintiff Singer and Defendant Med-Safe's person most knowledgeable (Nathan Miller) about the class claims. In addition, according to Plaintiff, over 325 discovery responses were prepared and assessed, and more than 2,300 pages of documents were produced and analyzed, in the initial disclosures that ensured.

Finally, and most importantly, the parties engaged in settlement discussions, which culminated in a formal, full-day mediation session on May 21, 2009 before a neutral mediator, Joel M. Grossman, Esq., who is highly experienced in wage and hour matters such as the claims in this case. The proposed settlement in this case is the direct result of Mr. Grossman's mediator proposal, which was made to resolve the parties' impasse. Moreover, after the agreement to settle was reached, the parties spent an additional five months preparing the settlement documents. Accordingly, the parties' extensive investigation, discovery, and subsequent settlement discussions weigh heavily in favor of granting final approval.

### D. The experience and views of counsel

As already noted, Plaintiff's counsel has extensive experience, having represented employees and employers in employment litigation matters since 1995, and having acted as class counsel in numerous employment law cases. Accordingly, because counsel believes the present settlement is both

1  fair and adequate, especially in light of some of the factual and legal uncertainties, this also weighs
2  in favor of granting final approval.

3        E.       The reaction of the class members to the proposed settlement

4  After dissemination of the class notice to the 266 members, which provided each class member
5  with the terms of the settlement and with an option to opt-out or file an objection, not one class
6  member has filed an objection or a request for exclusion. The absence of any objector strongly
7  supports the fairness, reasonableness, and adequacy of the settlement. See In re Austrian & German
8  Bank Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of
9  objections are received, that fact can be viewed as indicative of the adequacy of the settlement."
10 (citations omitted); Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding
11 "persuasive" the fact that 84% of the class has filed no opposition).

12 Moreover, there was a total of 174 claim forms returned, which amounts to 65.41% of the
13 entire Settlement Class. This is a significant return rate that also strongly supports the fairness,
14 reasonableness, and adequacy of the settlement. Accordingly, the overall reaction of the class
15 members weighs in favor of granting final approval.

16        F.       Collusion between the parties

17 The collusion inquiry addresses the possibility the agreement is the result of either overt
18 misconduct by the negotiators or improper incentives of certain class members at the expense of other
19 members of the class. Stanton, 327 F.3d at 960.  In the present case, because there is no evidence of
20 overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves
21 to self-interested action.

22 First, as already noted, the distribution between the two classes does not appear to be the result
23 of collusion between the parties. Rather, both the distribution and the disparity in ultimate recovery
24 appear to be reasonable in light of the number of affected class members in each class and the merits
25 of the respective claims.

26 The $25,000 incentive award for Plaintiff Singer also does not to appear to be the result of
27 collusion. The Court evaluates incentive awards using "'relevant factors including the actions the
28 plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from

those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation ... and reasonable fears of workplace retaliation.'" Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). In the present case, Singer has protected the interests of the class and exerted considerable time and effort in maintaining this action for the past two-and-a-half years, conducting extensive informal discovery, and engaging in day-long settlement negotiations with a respected mediator. The two classes have benefitted from these actions by, *inter alia*, receiving a settlement constituting 110% recovery on the Vacation Claims and the substantive changes in Defendants' policies and procedures at the Oceanside facility regarding the Non-Exempt Claims. Moreover, Singer has agreed not to seek an award of more than $750.00 from the Payout Fund.

Finally, the attorneys' fees also do not appear to be the result of collusion. Plaintiffs may simultaneously negotiate the merits and attorneys' fees. Stanton, 327 F.3d at 971. In the present case, the settlement agreement provides that Plaintiff's counsel, the firm of GraceHollis LLP, would recover an award of litigation costs up to $11,500.00 and attorneys' fees up to $333,333.00. With respect to the litigation costs, seeing as Plaintiff's counsel has already incurred costs in the amount of $12,990.17, the Court finds the award to be reasonable. Likewise, as discussed in more detail below, the Court finds reasonable the recovery of attorneys' fees sought by Plaintiff's counsel.

For the foregoing reasons, the Court finds that the settlement in this case appears to be "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2); Staton, 327 F.3d at 959. Accordingly, the Court **GRANTS** Plaintiff's motion for final approval of the settlement.

**III.    Attorneys' fees and costs for class counsel**

The settlement agreement provides that Plaintiff's counsel, the firm of GraceHollis LLP, would recover an award of litigation costs up to $11,500.00 and attorneys' fees up to $333,333.00. Parties to a class action may appropriately negotiate the payment of attorneys' fees and costs in conjunction with the settlement of the action itself. See Evans v. Jeff D., 475 U.S. 717, 734-35 (1986). In the present case, with respect to the litigation costs, seeing as Plaintiff's counsel has already incurred costs in the amount of $12,990.17, the Court finds the award to be reasonable. With respect to the attorneys' fees, the Ninth Circuit has established a 25% "benchmark" for common fund cases. Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993). This "benchmark percentage

should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Six (6) Mexican Workers v. Az. Citrus Growers, 904 F.2d 1301, 1311 (1990).

Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002). Nonetheless, an explanation is necessary when the district court departs from the "benchmark" of 25% of recovery. Powers, 229 F.3d at 1256-57. The Court turns to each of these factors in turn.

First, the results achieved in this case were very favorable. Broken down by class, the Vacation Settlement Group Members were able to recover approximately 110% of their claimed losses, while the Non-Exempt Settlement Group Members–whose claims faced greater uncertainties–were able to recover approximately 26% of their claimed losses. Second, as detailed above, the risks of litigation were real and substantial. Third, the complexity and duration of the case, coupled with the intensity of settlement negotiations, weighs in favor of departing from the 25% "benchmark." Fourth, class counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it for more than two years. Fifth, the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases, and is commensurate with other cases litigated by Plaintiff's counsel. See, e.g., Ingalls v. Hallmark Mktg. Corp., 08cv4342 VBF (Ex), Doc. No. 77, ¶ 6 (C.D. Cal. Oct. 16, 2009) (awarding 33.33% fee on a $5.6 million wage and hour class action); Birch v. Office Depot, Inc., Case No. 06cv1690 DMS (WMC), Doc. No. 48, ¶ 13 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million wage and hour class action); Rippee v. Boston Mkt. Corp., Case No. 05cv1359 BTM (JMA), Doc. No. 70, at 7-8 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million wage and hour class action).

For all of the foregoing reasons, the Court believes that a departure from the 25% "benchmark" is warranted in this case. This is especially so in light of the fact that not a single class member

1  objected to Plaintiff's counsel's intent to seek up to $333,333.00 in attorneys' fees and up to $11,500

2  in costs. Accordingly, the Court finds that the attorneys' fees and costs requested are reasonable.[4]

3  **IV.     Enhancement award for class representative**

4  Finally, the $25,000 incentive award for Plaintiff Singer also appears to be reasonable. "The

5  criteria courts may consider in determining whether to make an incentive award include: 1) the risk

6  to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and

7  personal difficulties encountered by the class representative; 3) the amount of time and effort spent

8  by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack

9  thereof) enjoyed by the class representative as a result of the litigation." Van Vranken v. Atlantic

10 Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

11 In the present case, the above factors weigh in favor of approving the enhancement award

12 requested. Plaintiff Singer has protected the interests of the class and exerted considerable time and

13 effort in maintaining this action for the past two-and-a-half years, conducting extensive informal

14 discovery, and engaging in day-long settlement negotiations. Overall, Plaintiff spent more than 165

15 hours in connection with prosecution and settlement of the class action claims. The two classes have

16 undoubtedly benefitted from these actions by, *inter alia*, receiving a settlement constituting 110%

17 recovery on the Vacation Claims and the substantive changes in Defendants' policies and procedures

18 at the Oceanside facility regarding the Non-Exempt Claims. Plaintiff Singer has also agreed not to

19 seek an award of more than $750.00 from the Payout Fund. Finally, no class members has objected

20 to Plaintiff's intent to seek an enhancement award of $25,000.

21 The $25,000 incentive award is also well within the acceptable range awarded in similar cases.

22 See, e.g., Brotherton v. Cleveland, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (approving an award

23 of $50,000 where the class representative "has been instrumental in bringing [the] lawsuit forward"

24 and "has performed numerous tasks in association with [the] litigation"); Van Vranken, 901 F. Supp.

25

26 [4] The Court also notes that the class counsel's lodestar in this case–i.e., the amount billed to date–already equals $347,958.00. (See Hollis Decl. ¶¶ 36-38.) The "lodestar," however, is only a cross-check on the reasonableness of the fee award. See, e.g., Vizcaino, 290 F.3d at 1050 & n.5 ("The
27 lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be
28 necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement.").

at 300 (approving an award of $50,000 for the named plaintiff). Accordingly, the Court finds the enhancement award requested to be reasonable.

## CONCLUSION

For the foregoing reasons, the Court: (1) **GRANTS** certification of the applicable classes; (2) **GRANTS** final approval of the settlement; (3) **GRANTS** the request for award of attorneys' fees and costs and **AWARDS** the firm of GraceHollis LLP litigation costs in the amount of $11,500.00 and attorneys' fees in the amount of $333,333.00; and (4) **GRANTS** the request for an enhancement award and **AWARDS** Plaintiff Singer a class representative enhancement award in the amount of $25,000.

**IT IS SO ORDERED.**

DATED:  June 1, 2010

*Irma E. Gonzalez*
IRMA E. GONZALEZ, Chief Judge
United States District Court